### DUNTON v. ALLAN LINE S. S. CO., Limited.

#### (District Court, E. D. Pennsylvania. April 10, 1902.)

#### No. 53 of 1901.

COLLISION—STEAM AND SAILING VESSELS MEETING IN FOG—UNAVOIDABLE ACCIDENT.

> A collision occurred at sea, during a thick fog, between a schooner and a steamship, which met on nearly parallel courses. Each heard the fog signal of the other, and the steamer at once slowed down to a moderate speed and proceeded with caution, while the schooner, which was sailing closehauled on the port tack at a speed of about two knots, kept her course and speed; the wind being very light. The vessels were both properly manned and equipped, and had proper lookouts. After they sighted each other, when they were about 100 yards apart, the steamer did all that was possible to prevent collision. *Held*, that neither vessel was chargeable with any fault, and that the collision must be attributed to unavoidable accident.

In Admiralty. Suit for collision.

Curtis Tilton and Robert H. Smith, for libelant.
Henry R. Edmunds, for respondent.

J. B. McPHERSON, District Judge. This controversy grows out of a collision between the four-masted schooner Lydia M. Deering and the British steamship Siberian, owned by the Allan Line Steamship Company. It took place in daylight, but during a thick fog, at half past 6 in the afternoon of June 2, 1901, about 75 miles east from the capes of the Delaware. The schooner was carrying 1,300 tons of ice from Maine to Washington, D. C.; and the steamship was bound from Philadelphia to Glasgow by the way of St. John's, Newfoundland, carrying a general cargo. The wind, which was very light, was from the S. W. or S. S. W. The schooner was carrying all her sails except her jib topsail, and was closehauled upon the port tack; her course being nearly west, and her speed about two knots an hour. The Siberian is a steamship of 2,454 net tons register, and her course upon the day in question was E. by N. ½ N. Both vessels were properly manned and equipped, and lookouts were stationed upon both, although the lookout on the schooner was a boy 17 years old, who had only been at sea for 3 months, and was not an experienced seaman.

Both vessels were blowing proper fog signals, and each vessel heard the signals upon the other as they approached. Owing to the thickness of the fog, it was impossible for either ship to see the other until they came as near as about 100 yards, and it was then too late to avoid a collision. The testimony satisfies me that, as soon as the vessels came in sight of each other, everything that was possible was done upon the steamship to avert the threatened disaster. She had already slowed down upon hearing for the first time the fog signal from the schooner, and this, I think, was her full duty. As the supreme court of the United States has said in The Ludvig Holberg, 157 U. S. 68, 15 Sup. Ct. 477, 39 L. Ed. 620, "No case has ever held that a steamer was obliged to stop at the first signal heard by her, unless its proximity be such as to indicate immediate danger." Clearly, there was no such indication in the present case, and the steamship was not at fault, therefore, in doing no more than slowing down to a moderate speed, and thereafter proceeding with caution. As soon as the Siberian saw the schooner, she immediately had her engines put full speed astern, and put her helm a-starboard in the effort to pass in safety. The schooner held her course, and in this I am unable to say that she was in error; for, if it be true, as was testified by some of the witnesses for the steamship, that the schooner's helm was put to port, the result would probably have been what these witnesses say that it actually was, namely, to swing the schooner's stern to port, and thereby bring her more directly across the bow of the approaching steamship. The bluff of the Siberian's port bow struck the schooner's port quarter well aft, and did a good deal of damage. Neither vessel, I think, was moving through the fog at a negligent rate of speed. The schooner's sails were all drawing, but the wind was so light that, as I have already said, she was not moving faster than 2 knots an hour, which gave her little more than steerage way; and the steamship had slowed her speed at the first intimation of danger, and thereafter proceeded with due caution.

My conclusion upon the whole case is that the collision was the result of unavoidable accident, and that the steamship is not in any degree responsible for the harm done to the schooner. I think the collision was due in large measure—perhaps was altogether due—to the well-known difficulty of determining with certainty in a fog from what point signals proceed. The unanimity with which the crew of the schooner declare their ability to fix the precise position of the steamship from the sound of her whistle, namely, at a half point upon the port bow, seems to me to be almost enough to discredit their story. They saw the steamship afterwards in that position, and this may account for the harmony in their testimony. But if she had previously been heard in that precise direction,—all hands agreeing about it then, as they do now,—the schooner ought to have ported immediately, and thereby have got as far to starboard as was possible. Prompt action in this direction on board the schooner would undoubtedly have avoided the collision, and I believe this action would have been taken if the crew of the schooner had really agreed then, without dissent, that the steamship was approaching nearly head on. Certainly the boy that was upon the lookout, and declared that in his opinion a point

was 60 degrees, should have his testimony at least carefully scrutinized before it is accepted.

I am of opinion that the libel should be dismissed, but, under the circumstances, I shall leave each party to bear his own costs.